**JOSEPH M. McMULLEN**
California State Bar No. 246757
**FEDERAL DEFENDERS OF SAN DIEGO, INC.**
225 Broadway, Suite 900
San Diego, California 92101-5030
Telephone: (619) 234-8467
Email: Joseph_McMullen@fd.org

Attorneys for Ms. Lyons-Hines

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

(**HONORABLE LARRY ALAN BURNS**)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>MICHAEL CURTIS KOZY (1),<br>**ELIZABETH ANN LYONS-HINES (2),**<br>Defendants. | CASE NO. 07CR3027-LAB<br><br>DATE: December 17, 2007<br>TIME: 2:00 p.m.<br><br>STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTIONS |

**I.**

**STATEMENT OF FACTS**

On October 24, 2007, at about 11:40 p.m., Ms. Lyons-Hines entered the United States from Mexico through the Calexico East Port of Entry as a passenger of a white Ford Focus. The driver of the vehicle was co-defendant Michael Curtis Kozy. During the primary inspection, Customs and Border Protection Officer G. Baltazar detected a gasoline odor emanating from the vehicle and was told by Mr. Kozy that he was the owner of the vehicle but was still in the process of registering it in his name. Officer Baltazar referred the vehicle to secondary inspection, during which Canine Enforcement Officer B. Pyburn’s canine alerted to the dash of the vehicle. During further inspection, forty-six packages of marijuana were extracted from the vehicle with a total gross weight of 53.34 kilograms.

Ms. Lyons-Hines and Mr. Kozy were placed under arrest and interrogated separately by Special Agent C. Worgen. Mr. Kozy again claimed ownership of the vehicle but denied knowledge of the drugs. Ms. Lyons-Hines stated that was the first time she had ever seen the vehicle and denied knowledge of the drugs. After their interviews, both Ms. Lyons-Hines and Mr. Kozy were transported to the Imperial County Jail.

On November 7, 2007, a grand jury returned an indictment charging Mr. Kozy and Ms. Lyons-Hines with one count of importation of marijuana in violation of 21 U.S.C. §§ 952, 960, one count of possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1), and aiding and abetting in violation of 18 U.S.C. § 2.

## II.

## THIS COURT SHOULD PRECLUDE THE PROSECUTION FROM PROCEEDING UNDER AN AIDING AND ABETTING THEORY ON ANY OF THE COUNTS

Ms. Lyons-Hines moves this Court to preclude the government from proceeding under an aiding and abetting theory on any of the counts in the indictment for the following reasons.

### A. Aiding and Abetting Requires Proof of An Additional Element, Beyond The Elements of the Underlying Offense, and Thus, This Element Must Be Alleged In the Indictment.

The Fifth Amendment to the Constitution provides in relevant part that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." U.S. Const. Amend. V; see also United States v. Calandra, 414 U.S. 338, 343 (1974) (citation omitted) (stating that "[i]n this country the Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by a 'presentment or indictment of a Grand Jury'"). An indictment must allege every essential element of the offense, including implied elements not present in the statutory language. United States v. Du Bo, 186 F.3d 1177, 1179 (9th Cir. 1999); see also United States v. Pernillo-Fuentes, 252 F.3d 1030, 1034 (9th Cir. 2001) (holding that specific intent must be alleged in indictment charging an attempted reentry by a deported alien); accord Russell v. United States, 369 U.S. 749, 763-64 (1962). "If an element is necessary to convict, it is also necessary to indict, because elements of a crime do not change as

criminal proceedings progress." United States v. Hill, 279 F.3d 731, 741 (9th Cir. 2002). An indictment's failure to "recite an essential element of the charged offense is not a minor or technical flaw . . . but a fatal flaw requiring dismissal of the indictment." Du Bo, 186 F.3d at 1179.

The Ninth Circuit has held that "[o]ur circuit law is clear that aiding and abetting contains an additional element of specific intent, beyond the mental state required by the principal crime."[1] United States v. Sayetsitty, 107 F.3d 1405, 1412 (9th Cir. 1997) (emphasis added); see also United States v. Gaskins, 849 F.2d 454, 459 (9th Cir. 1988) (expressly stating that "the elements necessary to convict an individual under an aiding and abetting theory are . . . that the accused had the specific intent to facilitate the commission of a crime by another"); United States v. Andrews, 75 F.3d 552, 555-57 (9th Cir. 1996) (reversing defendant's convictions for aiding and abetting murder and attempted voluntary manslaughter because there was insufficient evidence to show that the defendant "specifically intended" to facilitate the commission of the offense by someone else). Because a defendant is constitutionally entitled to a grand jury finding on every essential element necessary to convict him, this additional intent element must also be alleged in the indictment before the Government may proceed under an aiding and abetting theory.

//

//

---

[1] Indeed, Sayetsitty described the "aiding and abetting" jurisprudence as being "paralleled by [the Ninth Circuit's ] cases dealing with attempts." Sayetsitty, 107 F.3d at 1412. As the Ninth Circuit explained:

> Attempts, like aiding and abetting, involve a degree of uncertainty regarding the defendant's purpose to commit the underlying crime-an uncertainty that is not present in the case of a principal who actually commits the crime. Because of that uncertainty, it is reasonable to require proof of a specific intent that would not be required of one who completed the crime.

Id. Even if the substantive offense required proof of only general intent, aiding and abetting required proof of specific intent. Thus, because the district court failed to provide an intoxication instruction for a defendant charged with aiding and abetting, the Ninth Circuit reversed the conviction Id. As Sayetsitty demonstrates, the Government's decision to proceed under an aiding and abetting theory may open the door to possible defenses unavailable to the principal. This need for notice underscores why this element must be alleged in the indictment.

**B. The Cases Holding that the "Aiding and Abetting" Theory Is Implied in Every Federal Indictment Are Not to the Contrary.**

It is true that the Ninth Circuit has stated in dictum that aiding and abetting is implied in every indictment. See United States v. Armstrong, 909 F.2d 1238 (9th Cir. 1990); Gaskins, 849 F.2d at 1442; United States v. Michaels, 796 F.2d 1112, 1117-18 (9th Cir. 1986). However, none of these cases examined the language used in the indictment; they only examined the jury instructions. They accordingly do not resolve the question presented here.

Because the aiding and abetting statute, 18 U.S.C. § 2, "states a rule of criminal responsibility for acts which one assists another in performing," Nye & Nissen v. United States, 336 U.S. 613, 620 (1949), the acts set forth in section 2 merely describe the means of committing an offense. Armstrong, 909 F.2d at 1243; see also United States v. Causey, 835 F.2d 1289, 1292 (9th Cir. 1987); Michaels, 796 F.2d at 1117-18. Put another way, Armstrong and its antecedents do not hold that an indictment may omit the additional intent element required for a conviction under the aiding and abetting theory; they simply recognize that section 2 sets forth the acts of the defendant that expose him/her to liability as a principal. Because these cases do not discuss the additional intent element which is necessary to convict a defendant under the aiding and abetting theory, they are inapposite.[2]

**C. *United States V. Garcia* Supports Ms. Lyons-Hines's Argument**

The Government may try to rely on United States v. Garcia, 400 F.3d 816 (9th Cir. 2005). In that case the Ninth Circuit held that aiding and abetting liability is simply an "alternative theory of liability." Id. at 820. However, the Garcia Court was simply determining whether a unanimity instruction should have been given and whether counts of the indictment were duplicitous. Id. at 818-19. The Court rejected these arguments. Id. at 820. Nonetheless, the court acknowledged that "[o]f course, to prove liability as an aider abettor the government must establish beyond a reasonable doubt that the accused had the specific intent to facilitate the

---

[2] If section 2 does not require all offense elements to be alleged in the indictment, then it is unconstitutional. Congress cannot exempt its statutes from the requirements of the Grand Jury Clause of the Fifth Amendment. Thus, if this Court holds that section 2 does not require all elements necessary to convict to be alleged in the indictment, then it must strike this statute down.

commission of a crime by someone else - and this is an 'element' that need not be established for conviction on the underlying offense." Id. at 819. Thus, the Garcia Court acknowledged that aiding and abetting requires the government to prove the additional element of specific intent. It is well settled Ninth Circuit law that if the government is required to prove an element they are also required to include the element in the indictment.[3] Hill, 279 F.3d at 741. The government has failed to include this "element" and the indictment is, as a result, deficient.

**D. Neither the Prosecution Nor The Court May Broaden the Permissible Bases For Conviction Beyond Those Charged In the Indictment.**

Requiring the proof to remain true to the indictment enables the grand jury to protect citizens from the unilateral power of the Government to institute criminal prosecutions. United States v. Miller, 471 U.S. 130, 139 (1985). In accordance with these principles, the United States Supreme Court has observed that

> [i]f it lies within the province of a court to change the charging part of an indictment to suit its own notions of what it ought to have been, or what the grand jury would probably have made it if their attention had been called to suggested changes, the great importance which the common law attaches to an indictment by a grand jury, as a prerequisite to a prisoner's trial for a crime, and without which the Constitution says "no person shall be held to answer," may be frittered away until its value is almost destroyed.

Ex parte Bain, 121 U.S. 1, 10 (1962), overruled on other grounds by United States v. Cotton, 122 S.Ct. 1781 (2002).[4] Accordingly, the Court has held that a district court may not broaden the possible bases for conviction beyond those alleged in the indictment. Stirone v. United States, 361 U.S. 212, 218 & n.3 (1960).

"An amendment of the indictment occurs when the charging terms of the indictment are altered, either literally or in effect, by the prosecutor or a court after the grand jury has last passed

---

[3] The purpose of the indictment is not just to put the defendant on notice of the charges. The indictment also serves the purpose of ensuring that a defendant is never convicted of any crime the elements of which were not all presented to the grand jury. United States v. Resendiz-Ponce, 425 F.3d 729 (9th Cir. 2005) (quoting and citing United States v. Keith, 605 F.2d 462, 464 (9th Cir. 1979) and Du Bo, 186 F.3d at 1179)

[4] Cotton did not overrule Bain, Russell or Stirone. Cotton, 122 S.Ct. at 1785. Indeed, it expressly left this holding of Bain intact. Id. Nor did the Court discuss whether an indictment error is a structural defect or whether such an error affects substantial rights. Id. at 1785-86. Thus, it does not aid this Court's analysis.

upon them." United States v. Von Stoll, 726 F.2d 584, 586 (9th Cir. 1984); see also United States v. Cusimano, 148 F.3d 824, 829 (7th Cir. 1998) (recognizing that the court may not constructively amend the indictment through its instructions to the jury); United States v. Dipentino, 242 F.3d 1090, 1094 (9th Cir. 2001) (finding constructive amendment where district court instructed jury on work practice standard not alleged in indictment); United States v. Leichtnam, 948 F.2d 370, 380-81(7th Cir. 1991) (finding constructive amendment where indictment charged the defendant with using a specific firearm and where the evidence and the district court's instructions "broaden[ed] the possible bases for conviction to include knowingly using or carrying *any* firearm") (emphasis in original). Indeed, one court observed that

> [w]hat becomes essential to a charged offense in a particular case--that is, above and beyond what is necessary as a statutory matter--depends upon the structure of the indictment . . . and is completely within the government's control.

United States v. Willoughby, 27 F.3d 263, 266 (7th Cir. 1994) (internal citation omitted); United States v. Weissman, 899 F.2d 1111, 1114 (11th Cir. 1990) (citations omitted) (finding constructive amendment and observing that "it must be stressed that the government, through its ability to craft indictments, is the master of the scope of the charged RICO conspiracy . . . It is the prosecution which sets the parameters to which a RICO conspiracy trial must be confined; having set the stage, the government must be satisfied with the limits of its own creation."). A constructive amendment always requires reversal because it deprives a defendant of his right to be tried only on the grand jury's charge. Stirone, 361 U.S. at 217; United States v. Floresca, 38 F.3d 706, 713 (4th Cir. 1994) (en banc).

Applying these principles here, if the indictment fails to set forth the additional element of specific intent required to convict a defendant under the aiding and abetting theory, then neither the government nor the district court can broaden the indictment to include aiding and abetting as a possible basis for conviction.

**E. The Indictment Here Does Not Authorize the Prosecution to Proceed Under an Aiding and Abetting Theory.**

Sayetsitty clearly holds that to convict a defendant under an aiding and abetting theory, the government must prove at least two different intent elements: The defendant must have

specifically intended to aid the principal in the commission of the offense, and the defendant must have the requisite intent for the underlying offense. 107 F.3d at 1412. Aiding and abetting clearly requires proof of an additional intent element beyond the intent required by the statute. Id.

Here, for example, to convict under an aiding-and-abetting theory, the government needs to prove that the defendant intended to aid a principal in the commission of the offense, in addition to proving the intent elements attributed to the principal. These are distinct elements, and under Hill, DuBo, and Pernillo-Fuentes, all of these elements need to be alleged in the indictment. See Du Bo, 186 F.3d at 1179; Pernillo-Fuentes, 252 F.3d at 1032; Hill, 279 F.3d at 741. Because the indictment here failed to allege this additional intent element, this Court may not allow the government to proceed under an aiding and abetting theory. A contrary holding constructively amends the indictment and impermissibly broadens the scope of the charges.

**F. The Indictment's Mere Citation to 18 U.S.C. § 2, the Aiding-and-Abetting Statute, Does Not Render the Indictment Sufficient.**

The government may argue that even if the intent to aid and abet were required to be alleged in the indictment, the aiding-and-abetting statute was cited in the indictment here. It is true that the indictment here cited -- without more -- 18 U.S.C. § 2. However, this does not render the indictment sufficient.

The defendant's argument is not that the language, "aiding and abetting," or that any of the language set forth in section 2, must be alleged in the indictment; rather, he argues that the element recognized by the Ninth Circuit's case law -- that the defendant had the specific intent to aid the principal in the commission of the offense -- must be alleged in the indictment.

Additionally, the Ninth Circuit's case law cannot be clearer: when the indictment is questioned prior to trial, "[a] correct citation to the statute is not sufficient to compensate for the exclusion [of an essential element]." United States v. Kurka, 818 F.2d 1427, 1431 (9th Cir. 1987) (citing Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir. 1986); United States v. Rojo, 727 F.2d 1415, 1418-19 (9th Cir. 1983)); accord United States v. James, 980 F.2d 1314, 1318 (9th Cir. 1992). In Kurka, the defendant moved to dismiss the indictment on the ground that it failed

to allege that the damage to the property was willful. 818 F.2d at 1430. Even though the indictment cited the correct statute, the Ninth Circuit held that "[t]he failure to include the element of willfulness . . . render[ed] the indictment constitutionally defective," id. at 1431, and it accordingly reversed the defendant's conviction. Id. Likewise, here, mere citation to section 2 does not render the indictment sufficient.

In any event, section 2 does not set forth any offense elements. See Armstrong, 909 F.2d at 1241. As a consequence, mere citation to this statute does not reflect that the grand jury considered, much less found, the essential element that the defendant had the specific intent to aid the principal in the commission of the offense. Thus, citation to section 2 does not cure the deficiency in the indictment.

Thus, this Court should preclude the Government from proceeding under an aiding and abetting theory as to all counts.

## III.

## MS. LYONS-HINES' CASE SHOULD BE SEVERED FROM MR. KOZY'S TO AVOID UNFAIR PREJUDICE AT TRIAL

### A. Introduction

Ms. Lyons-Hines's rights to due process and a fair trial require that her trial be severed from Mr. Kozy's.

Rule 14(a) provides for the severance of defendants under certain conditions:

> [i]if the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant..., the court may order separate trials of counts, sever the defendant's trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14 (2007). Although a motion for severance is addressed to the trial court's discretion, see, e.g., United States v. Seifert, 648 F.2d 557, 563 (9th Cir. 1980), the granting of such a severance is warranted when there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence. United States v. Mayfield, 189 F.3d 895, 899 (9th Cir. 1999) (quoting United States v. Zafiro, 560 U.S. 534, 539 (1993)); United States v. Tootick, 952 F.2d 1078,

1083 (9th Cir. 1991).

**B. The Trial of Ms. Lyons-Hines Should be Severed Due to Prejudicial Joinder.**

Rule 14 of the Federal Rules of Criminal Procedure requires severance or other relief whenever a defendant may be prejudiced by joinder of defendants in an indictment or by joinder for trial altogether. See United States v. Escalante, 637 F.2d 1197, 1201 (9th Cir. 1980); United States v. Lutz, 621 F.2d 940, 945 (9th Cir. 1980); United States v. Tousant, 619 F.2d 810, 813 (9th Cir. 1980). A decision to sever multiple co-defendants' cases remains within the trial court's discretion. See United States v. Doe, 655 F.2d 920, 926 (9th Cir. 1980); United States v. Seifert, 648 F.2d 557, 563 (9th Cir. 1980). To warrant the issuance of a severance, the defendant must demonstrate that a joint trial is "so manifestly prejudicial that it outweighs the dominant concern with judicial economy and compels the exercise of the court's discretion to sever." Doe, 655 F.2d at 926 (citations omitted). See also Zafiro, 506 U.S. at 539.

A joint trial would greatly prejudice Ms. Lyons-Hines for four reasons. First, Ms. Lyons-Hines and her co-defendant will offer irreconcilable, mutually exclusive defenses. Second, Ms. Lyons-Hines will be denied access to the exculpatory testimony of her co-defendant, who she would be able to call to testify at a separate trial. Third, Ms. Lyons-Hines will be denied her Sixth Amendment rights of the Confrontation Clause and cross-examination. Finally, if tried together with the co-defendant, the jury may wrongly find Ms. Lyons-Hines guilty by association, impinging on Ms. Lyons-Hines' Due Process Rights. Because of the foregoing reasons, Ms. Lyons-Hines' case must be severed from that of her co-defendant.

1. Without Severance, the Defendants Will Offer Mutually Exclusive Defenses

Severance may be granted where the defendant "[shows] that the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant." United States v. Throckmorton, 87 F.3d 1069, 1072 (9th Cir. 1996).

The Ninth Circuit has recognized that "'[t]he prototypical example is a trial in which each of two defendants claims innocence, seeking to prove instead that the other committed the crime.'" United States v.Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991) (citing United States v.

Holcomb, 797 F.2d 1320, 1324 (5th Cir.1986)). Mutual exclusivity also may exist when "only one defendant accuses the other, and the other denies any involvement." Tootick, 952 F.2d at 1081 (citing United States v. Romanello, 726 F.2d 173, 177 (5th Cir. 1984)). See also United States v. Mayfield, 189 F.3d 895, 899-900 (9th Cir. 1999). For example, in Tootick, co-defendants Mr. Tootick and Mr. Frank each claimed that the other acted alone in stabbing Mr. Hart, the victim. Tootick, 952 F.2d at 1081. There was no dispute that all three men were present at the scene, and that Mr. Hart did not injure himself. Id. Mr. Frank testified that he watched in horror as Mr. Tootick stabbed Mr. Hart. Id. Mr. Tootick, who did not testify, presented a defense that he passed out or was asleep throughout the episode. Id. Thus, their defenses contradicted each other such that "the acquittal of one [necessitated] the conviction of the other." Id. The joint trial resulted in substantial prejudice to both defendants because their mutually exclusive defenses prevented the jury from determining the "guilt or innocence of each defendant on an individual and independent basis." Id. at 1082. The Ninth Circuit held that the district court abused its discretion in refusing to sever, and reversed both defendants' convictions.

Here, severance of Ms. Lyons-Hines' case from a joint trial is appropriate. Ms. Lyons-Hines and Mr. Kozy were arrested in the same vehicle. While Ms. Lyons-Hines was duped into her unknowing role by a clever and deceitful Mr. Kozy, it is likely that Mr. Kozy will claim that he is innocent and Ms. Lyons-Hines is responsible for the offense. Likewise, Mr. Kozy will likely present a defense that he is innocent and it was Ms. Lyons-Hines who set her up. It therefore appears that each defendant will present a defense that the other is the responsible party. Under these circumstances, severance of the cases is appropriate to ensure that the jury can "assess the guilt or innocence of each defendant on an individual and independent basis."

2. Without Severance, Ms. Lyons-Hines Will Have No Right to Call the Co-Defendant To Testify

A joint trial precludes Ms. Lyons-Hines from being able to elicit any favorable testimony from the co-defendant. Ms. Lyons-Hines would have no right to call the co-defendant as a witness, and might cause that co-defendant to invoke her Fifth Amendment privilege in front of the jury. U.S. v. Vigil, 561 F.2d 1316, 1318 (9th Cir. 1977).

At a separate trial, however, even if a co-defendant would not voluntarily testify, Ms. Lyons-Hines has a constitutional right to call her as a witness. See Bruton v. United States, 391 U.S. 123, 126-27 (1968). To ensure the invocation of this right, severance must be granted. Severance to facilitate the testimony of a co-defendant is proper if the three- element test of Rule 14 is satisfied. Under the test, a defendant must show that (1) the defendant would call the co-defendant to the stand in the severed trial, (2) that the co-defendant would testify, and (3), that the testimony would be favorable to the severing party. United States v. Reese, 2 F.3d 870, 892 (9th Cir. 1993). If the current cases were severed, Ms. Lyons-Hines could call her co-defendant to testify.

If a co-defendant is called as a witness and refuses to answer questions based upon her Fifth Amendment privilege against self-incrimination, Ms. Lyons-Hines can seek to compel that testimony by requesting immunity as to statements in court. At that time, Ms. Lyons-Hines could seek an order requiring the government to grant use immunity to the co-defendant's testimony under 18 U.S.C. § 6003(b)(1). Such use of this statute is compelled by the Sixth Amendment's guarantee of compulsory process and by the Fifth Amendment's due process considerations of fairness. See United States v. Leonard, 494 F.2d 955, 985 n.79 (D.C. Cir. 1974) (Bazelon, J., concurring in part and dissenting in part).

Even if statutory immunity is not appropriate, the Court can confer immunity independent of the prosecutor's statutory power because Ms. Lyons-Hines would be "prevented from presenting exculpatory evidence which is crucial to [her] case" if the trial court did not confer immunity. Government of the Virgin Islands v. Smith, 615 F.2d 964, 969-70 (3d Cir. 1980). See United States v. Alessio, 528 F.2d 1079, 1082 (9th Cir. 1976). Ms. Lyons-Hines' rights to compulsory process and to due process of law entitle her to a separate trial if Ms. Castendeda refuses to testify at a joint trial.

3. Without Severance, Ms. Lyons-Hines' Sixth Amendment Confrontation and Cross-Examination Rights Are Nullified.

The Sixth Amendment guarantees the accused the rights to confront and to cross-examine witnesses against him. Lilly v. Virginia, 527 U.S. 116, 123-24 (1999); Bruton v. United States,

391 U.S. 123, 126 (1968). When the government seeks to introduce an accomplice's hearsay statements against the accused, this Court must decide whether the Sixth Amendment permits the government to dispense with the accused's usual guarantee of confrontation and cross-examination. Lilly, 527 U.S. at 124. This Court has the power to sever Ms. Lyons-Hines' trial, and thus preserve her rights of confrontation and cross-examination. U.S. Const. amend VI; Fed. R. Crim. P. 14.

In Bruton v. United States, the Supreme Court held that the admission in a joint trial of a co-defendant's confession, which implicated the defendant, violated the defendant's Sixth Amendment right to confront and cross-examine when the co-defendant whose statement was introduced did not testify. 391 U.S. at 126. The Supreme Court has repeatedly reaffirmed the validity of Bruton's Sixth Amendment analysis. See, e.g., Richardson v. Marsh, 481 U.S. 200, 201-02 (1987) (holding that a defendant has the right to move for severance when a co-defendant in a joint trial makes admissions that implicate the defendant and the prosecution seeks to use such admissions).

Here, the government may seek to introduce statements by the co-defendant that mention Ms. Lyons-Hines. Any such statements made by the co-defendant are inadmissible prejudicial hearsay and cannot be admitted at a joint trial where Ms. Lyons-Hines has no opportunity to cross-examine that statement. Admission of such a statement in a joint trial violates Ms. Lyons-Hines' Sixth Amendment right to confront and cross-examine witnesses against her.

The Supreme Court has stated several times that " 'the naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction.' " Bruton, 391 U.S. at 129, quoting Krulewitch v. U.S., 336 U.S. 440, 453 (1949) (Jackson, J., concurring). The Court in Bruton held that instructing the jury to disregard the evidence was inadequate to remedy the significant prejudice inherent in such evidence. Id. at 135-36. The Court reaffirmed this principle in Cruz v. New York, 481 U.S. 186, 192-93 (1987), holding that an instruction to disregard such evidence is deficient when a co-defendant's confession, which directly incriminates the defendant, is admitted into evidence without the co-defendant being compelled to testify. For this reason, counsel requests severance in this case.

4. Without Severance, the Jury May Find Ms. Lyons-Hines Guilty by Association, Impinging on Ms. Lyons-Hines' Due Process Rights.

It is important to note that "[n]either mere association and activity with a co-conspirator nor even knowledge of the conspiracy's existence . . . meets the standards [required] to link a defendant to the conspiracy charge." United States v. Peterson, 549 F.2d 654, 658 (9th Cir. 1977). "Mere association and activity with a co-conspirator does not meet the test." United States v. Basurto, 497 F.2d 781, 793 (9th Cir. 1974) (citation omitted). A jury ordinarily experiences great difficulty in following admonishing instructions and in keeping separate evidence that is relevant only to co-defendants. In most cases,

> [a] co-defendant in a conspiracy trial occupies an uneasy seat. There generally will be evidence of wrongdoing by somebody. It is difficult for the individual to make his own case stand on its own merits in the minds of jurors who are ready to believe that birds of a feather are flocked together.

Krulewitch v. United States, 336 U.S. 440, 454 (1949) (Jackson, J., Concurring). If a jury cannot compartmentalize the evidence that pertains to each defendant, the trial court runs the risk of allowing a conviction based upon a defendant's association with incriminating evidence alone.

The jury cannot reasonably be expected to compartmentalize the evidence as it relates to Ms. Lyons-Hines alone. Cf. United States v. DeRosa, 670 F.2d 889, 898-99 (9th Cir. 1982) (noting that highly limited implicit connections between co-defendants may allow the jury to "easily compartmentalize the evidence"). In this case, there is a considerable amount of evidence that evidences Mr. Kozy's character and implicates him as being responsible for the crime charged. Most of this evidence would probably be admissible against Mr. Kozy in his separate trial. However, in a separate trial of Ms. Lyons-Hines, a jury would not be permitted to hear the prejudicial evidence pointing towards Mr. Kozy's guilt. Since Ms. Lyons-Hines will likely be prejudiced by evidence admissible only against her co-defendant, her rights can only be protected by severance of the two defendants.

//

//

//

## IV.

## MOTION TO COMPEL DISCOVERY/PRESERVE EVIDENCE

At this time Mr.Lyons-Hines has received **113 pages** of discovery and requests the following additional discovery materials. Her request is not limited to those items that the prosecutor knows of. It includes all discovery listed below that is in the custody, control, care, or knowledge of any "closely related investigative [or other] agencies." See United States v. Bryan, 868 F.2d 1032 (9th Cir. 1989); United States v. Jernigan, No. 05-10086, at *6 (9th Cir. July 9, 2007) (en banc).

(1) Brady Material. The defendant requests all documents, statements, agents' reports, and tangible evidence favorable to the defendant on the issue of guilt and/or which affects the credibility of the government's case. Under Brady, impeachment as well as exculpatory evidence falls within the definition of evidence favorable to the accused. United States v. Bagley, 473 U.S. 667 (1985); United States v. Agurs, 427 U.S. 97 (1976).

(2) Any Proposed 404(b) Evidence. The government must produce evidence of prior similar acts under Fed. R. Crim. P. 16(a)(1) and Fed. R. Evid. 404(b) and any prior convictions which would be used to impeach as noted in Fed. R. Crim. P. 609. In addition, under Fed. R. Evid. 404(b), "upon request of the accused, the prosecution . . . shall provide reasonable notice in advance of trial . . . of the general nature" of any evidence the government proposes to introduce under Fed. R. Evid. 404(b) at trial. The defendant requests such notice two weeks before trial in order to give the defense time adequately to investigate and prepare for trial.

(3) Evidence Seized. The defendant requests production of evidence seized as a result of any search. Fed. R. Crim. P. 16(a)(1)(E). She wishes to inspect the evidence before trial. **Specifically, the defense requests the opportunity to inspect the 2001 Ford Focus seized in this case. In addition, the defense wishes to inspect the 53.34 kilograms of marijuana allegedly found in the seized vehicle.** See Section III, below. **A proposed preservation order has been electronically mailed to the Court for the Court's signature.**

(4) Request for Preservation of Evidence. The defendant specifically requests the preservation of all physical evidence that may be destroyed, lost, or otherwise put out of the

possession, custody, or care of the government and which relates to the arrest or the events leading to the arrest in this case. This request includes, but is not limited to, any samples of narcotics used to run any scientific tests, any narcotics, the results of any fingerprint analysis, the vehicle which the defendant drove, the defendant's personal effects, and any evidence seized from the defendant or any third party.

In addition, Ms. Lyons-Hines specifically requests that the Assistant United States Attorney assigned to this case oversee a review of all personnel files of each agent involved in the present case for impeachment material. Kyles v. Whitley, 115 S. Ct. 1555 (1995); United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991); but see United States v. Herring, 83 F.3d 1120 (9th Cir. 1996).

(5) Tangible Objects. The defendant seeks to inspect and copy as well as test, if necessary, all other documents and tangible objects, including photographs, books, papers, documents, alleged narcotics, fingerprint analyses, vehicles, or copies of portions thereof, which are material to the defense or intended for use in the government's case-in-chief or were obtained from or belong to the defendant. Fed. R. Crim. P. 16(a)(1)(E). **A proposed preservation order has been electronically mailed to the Court for the Court's signature.**

(6) Expert Witnesses. The defendant requests the name, qualifications, and a written summary of the testimony of any person that the government intends to call as an expert witness during its case in chief. Fed. R. Crim. P. 16(a)(1)(G).

(7) Evidence of Bias or Motive to Lie. The defendant requests any evidence that any prospective government witness is biased or prejudiced against the defendant, or has a motive to falsify or distort his testimony.

(8) Impeachment Evidence. The defendant requests any evidence that any prospective government witness has engaged in any criminal act, whether or not resulting in a conviction, and whether any witness has made a statement favorable to the defendant. See Fed. R. Evid. 608, 609 and 613; Brady v. Maryland.

(9) Evidence of Criminal Investigation of Any Government Witness. The defendant requests any evidence that any prospective witness is under investigation by federal, state or local

authorities for any criminal conduct.

(10) Evidence Affecting Perception, Recollection, Ability to Communicate, or Truth Telling. The defense requests any evidence, including any medical or psychiatric report or evaluation, that tends to show that any prospective witness' ability to perceive, remember, communicate, or tell the truth is impaired, and any evidence that a witness has ever used narcotics or other controlled substance, or has ever been an alcoholic.

(11) Witness Addresses. The defendant requests the name and last known address of each prospective government witness. The defendant also requests the name and last known address of every witness to the crime or crimes charged (or any of the overt acts committed in furtherance thereof) who will not be called as a government witness.

(12) Name of Witnesses Favorable to the Defendant. The defendant requests the name of any witness who made an arguably favorable statement concerning the defendant.

(13) Statements Relevant to the Defense. The defendant requests disclosure of any statement relevant to any possible defense or contention that she might assert.

(14) Jencks Act Material. The defendant requests production in advance of trial of all material, including dispatch tapes, which the government must produce pursuant to the Jencks Act, 18 U.S.C. § 3500. Advance production will avoid the possibility of delay at the request of defendant to investigate the Jencks material.

(15) Giglio Information. Under Giglio v. United States, 405 U.S. 150 (1972), the defendant requests all statements and/or promises, express or implied, made to any government witnesses, in exchange for their testimony in this case, and all other information which could arguably be used for the impeachment of any government witnesses.

(16) Scientific and Other Information. To the extent not already provided, the defendant requests the results of any scientific or other tests or examinations, including testing done on the alleged marijuana. See Rule 16(a)(1)(F).

(17) Informants and Cooperating Witnesses. The defense requests disclosure of the name(s), address(es), and location(s) of all informants or cooperating witnesses used or to be used in this case, and in particular, disclosure of any informant who was a percipient witness in

this case or otherwise participated in the charged crime. Roviaro v. United States, 353 U.S. 52, 61-62 (1957). The government must disclose any information derived from informants which exculpates or tends to exculpate the defendant. Brady v. Maryland, 373 U.S. 83 (1963). The government must disclose any information indicating bias on the part of any informant or cooperating witness. Id.

(18) Personnel Records of Government Officers Involved in the Arrest. Mr. Lyons-Hines specifically requests all citizen complaints and other related internal affairs documents involving any of the Customs officers or other law enforcement officers who were involved in the investigation, arrest and interrogation of his, pursuant to Pitchess v. Superior Court, 11 Cal. 3d 531, 539 (1974). Because of the sensitive nature of these documents, defense counsel will not be able to procure them from any other source.

(19) Government Examination of Law Enforcement Personnel Files. The defendant requests that the Government examine the personnel files and any other files within its custody, care or control, or which could be obtained by the government, for all testifying witnesses, including testifying officers. She requests that these files be reviewed by the Government attorney for evidence of perjurious conduct or other like dishonesty, or any other material relevant to impeachment, or any information that is exculpatory, pursuant to its duty under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991). Only the prosecutor has the legal knowledge and ethical obligations to fully comply with this request.

(20) Training of Border Patrol and DEA Agents. The defendant requests copies of any and all written policies and/or training manuals issued by the Department of Homeland Security to their employees regarding: (1) the handling of vehicles suspected to be transporting illegal contraband near or to the border; (2) the detention of individuals within those vehicles suspected of carrying contraband; and (3) the search of those vehicles and the occupants of those vehicles.

(21) Residual Request. Ms. Lyons-Hines intends by this discovery motion to invoke his rights to discovery to the fullest extent possible under the Federal Rules of Criminal Procedure and the Constitution and laws of the United States. Ms. Lyons-Hines requests that the government provide him with the above requested material sufficiently in advance of trial to

avoid unnecessary delay prior to cross-examination.

**V.**

**MOTION TO PRESERVE AND RE-WEIGH NARCOTIC EVIDENCE**

Ms. Lyons-Hines requests an order for the U.S. Government and its agents to preserve the narcotic evidence in this case and permit the defense to re-weigh any narcotic evidence. For the Court's convenience, a proposed order is attached to these motions.

**VI.**

**MOTION TO DISMISS THE INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY**

Ms. Lyons-Hines recognizes that her argument below has been rejected by an en banc court of the Ninth Circuit. See United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc), cert. denied, Navarro-Vargas v. United States, 126 S. Ct. 736 (2005). Mr. Lyons-Hines nonetheless raises it to preserve the issue.

Ms. Lyons-Hines moves to dismiss the Indictment due to misinstruction of the Grand Jury. Ms. Lyons-Hines's arguments are essentially those set out in Judge Hawkins' dissent in United States v. Marcucci, 299 F.3d 1156 (9th Cir. 2002), cert. denied, 1538 U.S. 934 (2003), Judge Kozinski's dissent in United States v. Navarro-Vargas, 367 F.3d 896 (9th Cir. 2004), opinion vacated by United States v. Navarro-Vargas, 367 F.3d 920 (9th Cir. 2004), and Judge Hawkins' dissent in United States v. Navarro-Vargas, 408 F.3d 1184 (9th Cir. 2005) (en banc). Ms. Lyons-Hines incorporates those arguments by reference. However, if the Court would like further briefing on this issue, Ms. Lyons-Hines is willing to provide it.

**VII.**

**MOTION TO SUPPRESS MS. LYONS-HINES' STATEMENTS PURSUANT TO MIRANDA AND 18 U.S.C. § 3501**

The government bears the burden of demonstrating that a defendant's statement is voluntary and that Miranda warnings were given prior to a custodial interrogation. United States v. Harrison, 34 F.3d 886, 890 (9th Cir. 1994); see also United States v. Dickerson, 530 U.S. 428, 439-41 (2000) (discussing constitutional underpinnings of Miranda v. Arizona, 384 U.S. 436,

444 (1966) and the need to safeguard "precious Fifth Amendment rights"); see also 18 U.S.C. § 3501. Unless and until the government meets this high burden in this case, Ms. Lyons-Hines's statements must be suppressed.

## A. The Government Must Demonstrate Compliance with *Miranda* in This Case.

### 1. *Miranda* Warnings Must Precede Custodial Interrogation.

The prosecution may not use statements, whether exculpatory or inculpatory, stemming from a custodial interrogation of Ms. Lyons-Hines unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. Miranda v. Arizona, 384 U.S. 436, 444 (1966).[5] Custodial interrogation is questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. Id. See Orozco v. Texas, 394 U.S. 324, 327 (1969).

Once a person is in custody, Miranda warnings must be given prior to any interrogation. See United States v. Estrada-Lucas, 651 F.2d 1261, 1265 (9th Cir. 1980). Those warnings must advise the defendant of each of his or her "critical" rights. United States v. Bland, 908 F.2d 471, 474 (9th Cir. 1990). In order for the warning to be valid, the combination or the wording of its warnings cannot be affirmatively misleading. United States v. San Juan Cruz, 314 F.3d 384, 387 (9th Cir. 2003). The warning must be clear and not susceptible to equivocation. Id. (vacating illegal entry conviction where defendant was advised of his administrative rights from an I-826 form and later advised of his Miranda rights). If a defendant indicates that he wishes to remain silent or requests counsel, the interrogation must cease. Miranda, 384 U.S. at 474; see also Edwards v. Arizona, 451 U.S. 484 (1981). Unless and until the government shows that the agents properly administered the Miranda warnings, the government cannot use evidence obtained as a result of any custodial interrogation that occurred after Ms. Lyons-Hines's arrest. Miranda, 384 U.S. at 479.

//

//

---

[5] In Dickerson v. United States, 530 U.S. 428, 120 S. Ct. 2326 (2000), the Supreme Court held that Miranda rights are no longer merely prophylactic, but are of constitutional dimension. Id. at 2336 ("we conclude that Miranda announced a constitutional rule").

**2. The Government Must Demonstrate That Any Alleged Waiver of Ms. Lyons-Hines's Rights Was Voluntary, Knowing, and Intelligent.**

When interrogation occurs without the presence of an attorney and a statement is taken, a *heavy* burden rests on the government to demonstrate that the defendant intelligently and voluntarily waived his privilege against self-incrimination and his right to retained or appointed counsel. Miranda, 384 U.S. at 475. It is undisputed that, to be effective, a waiver of the right to remain silent and the right to counsel must be made knowingly, intelligently, and voluntarily. Schneckloth, 412 U.S. 218. To satisfy this burden, the prosecution must introduce evidence sufficient to establish "that under the 'totality of the circumstances,' the defendant was aware of 'the nature of the right being abandoned and the consequences of the decision to abandon it." United States v. Garibay, 143 F.3d 534, 536 (9th Cir. 1998) (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). The Ninth Circuit has stated that "[t]here is a presumption against waiver." Garibay, 143 F.3d at 536. The standard of proof for a waiver of these constitutional rights is high. Miranda, 384 U.S. at 475. See United States v. Heldt, 745 F.2d 1275, 1277 (9th Cir. 1984) (the burden on the government is great, the court must indulge every reasonable presumption against waiver of fundamental constitutional rights). Finally, it should be noted that, since Miranda rests on a constitutional foundation, see Dickerson v. United States, 530 U.S. 428, 438 (2000), no law or local court rule relieves the government of its burden to prove that Ms. Lyons-Hines voluntarily waived the Miranda protections. Miranda, 384 U.S. 475.

The validity of the waiver depends upon the particular facts and circumstances surrounding the case, including the background, experience, and conduct of the accused. Edwards v. Arizona, 451 U.S. 477, 472 (1981); Johnson v. Zerbst, 304 U.S. 458, 464 (1983). See also United States v. Heldt, 745 F.2d at 1277; United States v. McCrary, 643 F.2d 323, 328-29 (9th Cir. 1981). In Derrick v. Peterson, 924 F.2d 813 (9th Cir. 1990), the Ninth Circuit confirmed that the issue of the validity of a Miranda waiver requires a two prong analysis: the waiver must be both (1) voluntary, and (2) knowing and intelligent. Id. at 820.

The voluntariness prong of this analysis "is equivalent to the voluntariness inquiry under the [Fifth] Amendment . . . ." Id. The second prong, requiring that the waiver be "knowing and

intelligent," mandates an inquiry into whether "the waiver [was] made with a full awareness both of the nature of the right being abandoned and the consequences of the decision to abandon it." Id. at 820-21 (quoting Colorado v. Spring, 479 U.S. 564, 573 (1987)). This inquiry requires that the Court determine whether "the requisite level of comprehension" existed before the purported waiver may be upheld. Id. Thus, "[o]nly if the `totality of the circumstances surrounding the interrogation' reveal *both* an uncoerced choice *and* the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived." Id. (quoting Colorado v. Spring, 479 U.S. at 573) (emphasis in original) (citations omitted)).

Under prevailing Ninth Circuit law, the government bears the burden of demonstrating a meaningful Miranda waiver by clear and convincing evidence. See Schell v. Witek, 218 F.3d 1017 (9th Cir. 2000) (en banc) (constitutional rights may ordinarily be waived only if it can be established by clear and convincing evidence that the waiver is voluntary, knowing, and intelligent) (citations omitted). Moreover, this Court must "indulge every reasonable presumption against waiver of fundamental constitutional rights." Id. (citations omitted). Unless and until the prosecution meets its burden of demonstrating through *evidence* that adequate Miranda warnings were given and that Ms. Lyons-Hines knowingly and intelligently waived her rights, Ms. Lyons-Hines's statements must be suppressed Miranda, 384 U.S. at 479.

**B. The Government Bears the Burden of Proving Ms. Lyons-Hines's Statements Were Made Voluntarily.**

A defendant in a criminal case is deprived of due process of law if the conviction is founded upon an involuntary confession. Arizona v. Fulminante, 499 U.S. 279 (1991); Jackson v. Denno, 378 U.S. 368, 387 (1964). This is so even when the procedural safeguards of Miranda have been satisfied. Id. The government bears the burden of proving by a preponderance of the evidence that a confession is voluntary. Lego v. Twomey, 404 U.S. 477, 483 (1972).

In order to be voluntary, a statement must be the product of a rational intellect and free will. Blackburn v. Alabama, 361 U.S. 199, 208 (1960). In determining whether a defendant's will was overborne in a particular case, the totality of the circumstances must be considered. Schneckloth, 412 U.S. at 226. Some factors taken into account have included the youth of the

accused, his lack of education, his low intelligence, the lack of any advice to the accused of his constitutional rights, the length of the detention, the repeated and prolonged nature of the questioning, and the use of physical punishment such as the deprivation of food or sleep. Id.

A confession is deemed involuntary whether coerced by physical intimidation or psychological pressure. Townsend v. Sain, 372 U.S. 293, 307 (1962). "The test is whether the confession was extracted by any sort of threats or violence, [or] obtained by any direct or implied promises, however slight, [or] by the exertion of any improper influence.'" Hutto v. Ross, 429 U.S. 28, 30 (1976) (quoting Bram v. United States, 168 U.S. 532, 542-43 (1897)). See also United States v. Tingle, 658 F.2d 1332, 1335 (9th Cir. 1981).

Until the government meets its burden of showing all statements of Ms. Lyons-Hines that it intends to use at trial were voluntary, her statements must be suppressed as involuntary. 18 U.S.C. § 3501(a).

**C. This Court Must Conduct An Evidentiary Hearing to Determine the Voluntariness of Ms. Lyons-Hines's Statements.**

This Court must make a factual determination as to whether a confession was voluntarily given prior to its admission into evidence. 18 U.S.C. § 3501(a). Where a factual determination is required, courts are obligated by Federal Rule of Criminal Procedure 12 to make factual findings. See United States v. Prieto-Villa, 910 F.2d 601, 606-10 (9th Cir. 1990). Because "'suppression hearings are often as important as the trial itself,'" id. at 609-10 (quoting Waller v. Georgia, 467 U.S. 39, 46 (1984)), these findings should be supported by evidence, not merely an unsubstantiated recitation of purported evidence in a prosecutor's responsive pleading. Under section 3501(b), this Court must consider "all the circumstances surrounding the giving of the confession," including:

> (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment, (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession, (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement could be used against him, (4) whether or not such defendant had been advised prior to questioning of his right to the assistance of counsel, and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession.

18 U.S.C. § 3501(b).

Without the presentation of evidence, this Court cannot adequately consider these statutorily mandated factors. Accordingly, Ms. Lyons-Hines requests that this Court conduct an evidentiary hearing pursuant to 18 U.S.C. § 3501(a), to determine, outside the presence of the jury, whether any statements made by Ms. Lyons-Hines were voluntary.

## VIII.

## LEAVE TO FILE FURTHER MOTIONS

Ms. Lyons-Hines and defense counsel have received only limited discovery in this case. As new information surfaces – via further discovery provided by government, defense investigation, or an order of this court – the defense may need to file further motions, or to supplement existing motions. For this reason, defense counsel requests leave to file further motions.

## IX.

## CONCLUSION

For the reasons stated, Ms. Lyons-Hines requests that this Court grant her motions.

Respectfully submitted,

Dated: November 26, 2007

/s/ *Joseph M. McMullen*
**JOSEPH M. McMULLEN**
Federal Defenders of San Diego, Inc.
Attorneys for Ms. Lyons-Hines

**CERTIFICATE OF SERVICE**

Counsel for Defendant certifies that the foregoing pleading is true and accurate to the best of his information and belief, and that a copy of the foregoing document has been served this day upon:

**Luella Caldito**
Luella.Caldito@usdoj.gov; efile.dkt.gc1@usdoj.gov

Dated: November 26, 2007 *__/s/ Joseph McMullen__*

JOSEPH McMULLEN
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, CA 92101-5030
(619) 234-8467 (tel)
(619) 687-2666 (fax)
e-mail: Joseph_McMullen@fd.org