KAREN P. HEWITT
United States Attorney
LUELLA M. CALDITO
Assistant U.S. Attorney
California State Bar No. 215953
United States Attorney's Office
880 Front Street, Room 6293
San Diego, California 92101-8893
Telephone: (619) 557-7035/(619) 235-2757 (Fax)
Email: Luella.Caldito@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>MICHAEL CURTIS KOZY (1),<br>ELIZABETH ANN LYONS-HINES (2),<br><br>Defendants. | CRIM. CASE NO. 07CR3027-LAB<br><br>DATE: December 17, 2007<br>TIME: 2:00 p.m.<br><br>GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO:<br>(1) PRECLUDE THE PROSECUTION FROM PROCEEDING UNDER AN AIDING AND ABETTING THEORY ON ANY OF THE COUNTS;<br>(2) SEVER THE DEFENDANTS' TRIALS;<br>(3) COMPEL DISCOVERY AND PRESERVE EVIDENCE;<br>(4) PRESERVE AND REWEIGH NARCOTICS EVIDENCE;<br>(5) DISMISS INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY;<br>(6) SUPPRESS STATEMENTS; AND<br>(7) GRANT LEAVE TO FILE FURTHER MOTIONS.<br><br>TOGETHER WITH STATEMENT OF FACTS AND MEMORANDUM OF POINTS AND AUTHORITIES |

COMES NOW, the plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Karen P. Hewitt, United States Attorney, and Luella M. Caldito, Assistant United States Attorney,

hereby files its Response in Opposition to Defendants' above-referenced Motions. This Response is based upon the files and records of this case.

**I**

**STATEMENT OF THE CASE**

On November 7, 2007, a federal grand jury in the Southern District of California returned an Indictment charging Defendants Michael Curtis Kozy and Elizabeth Ann Lyons-Hines with Importation of Marijuana in violation of Title 21, United States Code, Sections 952 and 960, and Title 18, United States Code, Section 2 and Possession of Marijuana with the Intent to Distribute, in violation of Title 21, United States Code, Section 841(a)(1), and Title 18, United States Code, Section 2. Defendants were arraigned on the Indictment on November 8, 2007, and entered a plea of not guilty.

**II**

**STATEMENT OF FACTS**

On October 24, 2007, at approximately 9:40 p.m., Defendants entered the United States from Mexico at the Calexico, California, East Port of Entry. Defendant Michael Curtis Kozy ("Kozy") was the driver of a 2001 Ford Focus. Defendant Elizabeth Ann Lyons-Hines ("Lyons-Hines") was the passenger of that vehicle. At primary inspection, defendant Kozy claimed that defendant Lyons-Hines was his wife and provided Customs and Border Protection ("CBP") Officer G. Baltazar with a negative customs declaration. When asked about the purpose of their trip to Mexico, defendant Kozy claimed that earlier that day, they had traveled from Bakersfield, California to visit his mother-in-law in El Centro, California and that they went to Mexicali to get something to eat.

During primary inspection, Officer Baltazar noticed a strong odor of gasoline coming from underneath the vehicle. Officer Baltazar then instructed defendant Kozy to open the trunk of the vehicle. When defendant Kozy stepped out of the vehicle to open the trunk, Officer Baltazar noticed that defendant Kozy began to grow nervous and uneasy. Defendant Kozy further claimed that he was in the process of registering the vehicle under his name since he recently purchased

the vehicle from his friend, Daniel. Officer Baltazar used a mirror and flashlight to inspect underneath the vehicle. At this time, Officer Baltazar noticed that gasoline was leaking from the gas tank. Officer Baltazar then referred the vehicle and its occupants to secondary inspection.

At secondary inspection, defendant Kozy told they were visiting his mother-in-law in Mexicali. Both defendants were asked to step out of the vehicle. Officer Medina asked defendant Lyons-Hines who owned the vehicle. Defendant Lyons-Hines responded, "ours." Defendant Kozy again claimed that he owned the vehicle and that the registration was still under his friend's name. Officer Pyburn began to screen the vehicle with his his narcotic detector dog. The dog alerted to the dash of the vehicle. Upon further inspection, 46 packages, weighing 53.34 kilograms, were removed from the vehicle– 24 packages from the dash, 14 packages from the gas tank, 3 packages from the rear driver side quarter panel and 6 from the rear passenger side quarter panel. An officer probed one of the packages, producing a green leafy substance that tested positive for marijuana.

At approximately 1:40 a.m. on October 25, 2007, defendant Kozy was advised of his <u>Miranda</u> rights, which he acknowledged and waived. Defendant Kozy denied knowledge of the marijuana found in the vehicle.

At approximately 2:50 a.m., defendant Lyons-Hines was advised of her <u>Miranda</u> rights, which she acknowledged and waived. Defendant Lyons-Hines denied knowledge of the marijuana found in the vehicle.

## III

## <u>ARGUMENT</u>

### A. <u>The Government May Proceed on an Aiding and Abetting Theory</u>

Defendants argue that the Government should be precluded from proceeding with an aiding and abetting theory, as the Indictment did not allege the specific intent element particular to aiding and abetting liability. However, neither aiding and abetting as a theory of liability nor its elements need be alleged in a federal indictment. The Government is not barred from proceeding under an aiding and abetting theory just because the Indictment did not allege the specific intent unique to

that theory. It is well-settled that "[a]iding and abetting is implied in every federal indictment for a substantive offense." United States v. Armstrong, 909 F.2d 1238, 1241 (9th Cir. 1990); United States v. Garcia, 400 F.3d 816, 820 (9th Cir.) ("We have also held a number of times . . . that aiding and abetting is embedded in every federal indictment for a substantive crime."), cert. denied, 126 S. Ct. 839 (2005); United States v. Vaandering, 50 F.3d 696, 702 (9th Cir. 1995). As such, it is equally settled that the theory need not even be alleged, and that, if it is, the allegation is surplusage. United States v. Canon, 993 F.2d 1439, 1442 (9th Cir. 1993) ("Every indictment for a federal offense charges the defendant as a principal and as an aider and abettor; thus, a count for aiding and abetting is unnecessary."); Armstrong, 909 F.2d at 1241 (both subsections of 18 U.S.C. § 2 are implied in every "indictment, whether or not they have been specifically charged"); United States v. Roselli, 432 F.2d 879, 895 n.27 (9th Cir. 1970) ("An accused charged with an offense may be convicted on evidence showing that he aided and abetted another in the commission of that offense, even though the indictment does not allege this theory of liability; hence the language of the indictment charging him with aiding and abetting was simply surplusage.").

If aiding and abetting need not be charged at all, it follows that the individual elements of that theory – including specific intent – need not be charged. The Ninth Circuit, in fact, has held as much. Ellis v. United States, 321 F.2d 931, 932 (9th Cir. 1963) (refusing to dismiss indictment because aiding and abetting counts did not allege the means or method used by defendant to aid and abet the principals; "Such allegations are not necessary."); Grant v. United States, 291 F.2d 746, 749 (9th Cir. 1961) (reaching same conclusion as to mens rea of aiding and abetting; "It is not necessary to allege that one 'knowingly' abetted. . . . One need not even be charged as an aider and abettor in order to be held as one.") (citations omitted).

**B. Defendants' Cannot Satisfy Their Burden in Demonstrating that Severance is Required**

Rule 8(b) of the Federal Rules of Criminal Procedure specifically provides for the joinder of defendants where they participated in the same series of acts or transactions constituting an offense or group of offenses. Rule 8(b) provides that:

> The indictment . . . may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses. The defendants may be charged in one or more counts together or separately. All defendants need not be charged in each count.

"Co-defendants jointly charged are, *prima facie*, to be jointly tried." United States v. Mariscal, 939 F.2d 884, 885 (9th Cir. 1991), citing United States v. Doe, 665 F.2d 920, 926 (9th Cir. 1980); see also United States v. Silla, 555 F.2d 703, 707 (9th Cir. 1977) ("compelling circumstances" generally required to show necessity of separate trial).

Where, as here, initial joinder is proper, the granting or denial of a motion for severance is governed by Rule 14(a) of the Federal Rules of Criminal Procedure. Rule 14(a) provides in pertinent part:

> If the joinder of offenses or defendants in an indictment . . . appears to prejudice a defendant or the government, the court may . . . sever the defendants' trials, or provide any other relief that justice requires.

Thus, in order to justify a severance under Rule 14, the defendant bears the heavy burden of demonstrating undue prejudice. See, eg., United States v. Arbelaez, 719 F.2d 1453, 1460 (9th Cir. 1983). The Supreme Court has held that "when defendants have been properly joined under Rule 8(b), a district court should grant severance under Rule 14(a) only if there is a serious risk that a joint trial would prejudice a specific trial right of one of the defendants or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. 534, 536 (1993). For the reasons outlined below, defendants' motion to sever should be denied.

**1. Defendants Have Not Shown that their Defenses are Antagonistic and Mutually Exclusive as to Warrant Severance**

Defendants argue for severance because the co-defendant will have antagonistic and mutually exclusive defenses at trial. Even when co-defendants present antagonistic defenses, such

defenses "are not prejudicial per se." Id. at 538 (noting that a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence). The Supreme Court noted that few courts have reversed convictions for failure to sever on the grounds of antagonistic defenses. Id.

To warrant severance on the basis of antagonistic defenses, co-defendants must show that their defenses are irreconcilable and mutually exclusive. See United States v. Angwin, 271 F.3d 786, 795-96 (9th Cir. 2001) (rejection of defense argument that ignorance is irreconcilable with a defense based on a lack of guilty intent such as duress); United States v. Sherlock, 962 F.2d 1349, 1363 (9th Cir. 1992) (mere presence of hostility among defendants or the desire of one to exculpate himself by inculpating the other does not generate the kind of prejudice that mandates severance). Defenses are mutually exclusive when "acquittal of one co-defendant would necessarily call for the conviction of the other." United States v. Tootick, 952 F.2d 1078, 1081 (9th Cir. 1991); United States v. Throckmorton, 87 F.3d 1069, 1072 (9th Cir. 1996) (noting that "a defendant must show that the core of the co-defendant's defense is so irreconcilable with the core of his own defense that the acceptance of the co-defendant's theory by the jury precludes acquittal of the defendant").

In Throckmorton, Throckmorton was tried with a co-defendant for conspiracy to import a controlled substance. Throckmorton moved to sever trials, as the co-defendant's defense was that he had, in fact, imported the narcotics (along with Throckmorton), but had done so under color of public authority. Throckmorton's defense was a theory of insufficiency of the evidence. The Ninth Circuit affirmed the district court's denial of the motion to sever, stating:

> It is clear [co-defendant's] defense was antagonistic to Throckmorton's. Antagonism between defenses of the desire of one defendant to exculpate himself by inculpating a codefendant, however, is insufficient to require severance. To be entitled to severance on the basis of mutually antagonistic defenses, a defendant must show that **the core of the codefendant's defense is so irreconcilable with the core of his own defense that the acceptance of the codefendant's theory by the jury precludes acquittal of the defendant**.

87 F.3d at 1072 (emphasis added). See United States v. Ramirez, 710 F.2d 535, 546 (9th Cir. 1983); United States v. Brady, 579 F.2d 1121, 1129 (9th Cir. 1978); United States v. Marable, 574 F.2d 224, 231 (5th Cir. 1978). The lesson of all these cases is that the court should not grant a severance "absent clear evidence" that the defenses are truly mutually exclusive.

Under Throckmorton, Defendants' motion to sever should be denied. Here, defendants simply claim that, "it is likely that Mr. Kozy will claim that he is innocent and Ms. Lyons-Hines is responsible for the offense. Likewise, Mr. Kozy will likely present a defense that he is innocent and it was Ms. Lyons-Hines who set her up." See Defendant Lyon-Hines' Motion at 10. Essentially, defendants "will present a defense that the other is the responsible party." See id. However, as the Ninth Circuit explained, the desire of one to exculpate himself by inculpating the other does not generate the kind of prejudice that mandates severance. See United States v. Sherlock, 962 F.2d at 1363. Thus, defendants have not shown that their defenses are mutually exclusive to warrant severance.

**2. Severance Is Not Required To Allow Defendants To Present Testimony From Co-Defendants**

Defendants seeking a severance to present a co-defendant's testimony face an uphill battle in the Ninth Circuit, as "[s]everance is rarely granted on this ground." United States v. Hoelker, 765 F.2d 1422, 1425 (9th Cir. 1985); United States v. Gay, 567 F.2d 916, 919 (9th Cir. 1978) ("The 'great mass' of cases refuse to grant a severance despite the anticipated exculpatory testimony of a co-defendant."). A defendant "must show [1] that he would call the codefendant at a severed trial, [2] that the codefendant would in fact testify, and [3] that the testimony would be favorable to the moving party." United States v. Hernandez, 952 F.2d 1110, 1115 (9th Cir. 1991) (internal quotation marks omitted).

As to the third prong, the court is "required to consider the weight and credibility of the proposed testimony." United States v. Pitner, 307 F.3d 1178, 1181 (9th Cir. 2002). Circuit law holds that the defendant must "show more than the offered testimony would benefit him; he must show that the codefendant's testimony is 'substantially exculpatory' in order to succeed." United

States v. Mariscal, 939 F.2d 884, 886 (9th Cir. 1991). By way of example, testimony is not substantially exculpatory if it is a "mere assertion of ultimate facts" (United States v. Taren-Palma, 997 F.2d 525, 533 (9th Cir. 1993), overruled on other grounds, United States v. Shabani, 513 U.S. 10 (1994)), "would merely contradict portions of the government's proof. . . leaving other inculpatory evidence that in and of itself would be sufficient to support a conviction," or "essentially consist[s] of a series of denials that the testimony of certain government witnesses was true." United States v. Reese, 2 F.3d 870, 892 (9th Cir. 1993) (internal quotation marks omitted); see also Pitner, 307 F.3d at 1181 ("testimony is not 'substantially exculpatory' if it refutes only portions of the government's case, and leaves unaffected other evidence sufficient to convict"). Finally, "the defendant may have to show [4] that the co-defendant's testimony would not be cumulative," and the court must consider "the economy of severance." Hernandez, 952 F.2d at 1115.

Defendants' severance claim is plainly insufficient. There has been no showing that the co-defendant would testify in a severed trial, much less provide testimony favorable to the moving party. As such, defendants' severance motion should be denied.

**3. There Are No Bruton Problems to Justify Severance**

Likewise insufficient is defendants' suggestion that Bruton v. United States, 391 U.S. 123 (1968), requires a severance. There exist no Bruton problem for defendants. Both defendants did not provide a confession and both defendants did not implicate the other. See United States v. Olano, 62 F.3d 1180, 1195 (9th Cir. 1995) (holding that co-defendant statements, which lack the impact of a full-blown confession, do not implicate Bruton and do not require severance.) To the contrary, each defendant denied knowledge and did not suggest that the other was aware of the drugs or more culpable. See United States v. Tille, 729 F.2d 615, 623 (9th Cir. 1984) (recognizing that a co-defendant's denial of knowledge is not damaging to the defendant under Bruton). Thus, defendants' motion to sever based on a nonexistent Bruton problem should be denied.

**4. <u>Severance is Not Required to Cure Any Prejudice</u>**

Defendants claim they will be prejudiced by the spillover effect of evidence introduced against their co-defendant in a joint trial. Ninth Circuit law holds that "[i]n assessing the prejudice to a defendant from the 'spillover' of incriminating evidence, the primary consideration is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants, in view of its volume and the limited admissibility of some of the evidence." <u>United States v. Cuozzo</u>, 962 F.2d 945, 950 (9th Cir. 1992) (internal quotation marks omitted). The settled rule is the "prejudicial effect of evidence relating to the guilt of codefendants is generally held to be neutralized by careful instruction by the trial judge." <u>United States v. Douglass</u>, 780 F.2d 1472, 1479 (9th Cir. 1986) (internal quotation marks omitted). Accordingly, defendants "seeking severance based on the 'spillover' effect of evidence admitted against a co-defendant must also demonstrate the insufficiency of limiting instructions given by the judge." <u>United States v. Nelson</u>, 137 F.3d 1094, 1108 (9th Cir. 1998) (internal quotation marks omitted).

Here, again, defendants cannot justify a severed trial, especially in light of limiting instructions from the court to cure any potential prejudice. The issues in this case are not complex; the jury can reasonably be expected to compartmentalize the evidence in this case. Therefore, this Court should deny defendants' motion to sever.

**C. <u>Motion to Compel Discovery and Preserve Evidence</u>**

The United States has and will continue to fully comply with its discovery obligations. To date, the United States has produced 114 pages of discovery to the defense, including a DVD copy of defemdants' post-arrest interview. As of today, the United States has received no reciprocal discovery. Counsel believes that all discovery disputes can be resolved amicably and informally in this case. In view of the below-stated position of the United States concerning discovery, it is respectfully requested that no orders compelling specific discovery by the United States be made at this time. The Government has no objection to the preservation of evidence for a reasonable time period.

1. Brady Material

The United States is well aware of and will continue to perform its duty under Brady v. Maryland, 373 U.S. 83 (1963), and United States v. Agurs, 427 U.S. 97 (1976), to disclose exculpatory evidence within its possession that is material to the issue of guilt or punishment. Defendants, however, are not entitled to all evidence known or believed to exist which is, or may be, favorable to the accused, or which pertains to the credibility of the United States' case. As stated in United States v. Gardner, 611 F.2d 770 (9th Cir. 1980), it must be noted that "the prosecution does not have a constitutional duty to disclose every bit of information that might affect the jury's decision; it need only disclose information favorable to the defense that meets the appropriate standard of materiality." Id. at 774-775 (citation omitted).

The United States will turn over evidence within its possession which could be used to properly impeach a witness who has been called to testify.

Although the United States will provide conviction records, if any, which could be used to impeach a witness, the United States is under no obligation to turn over the criminal records of all witnesses. United States v. Taylor, 542 F.2d 1023, 1026 (8th Cir. 1976). When disclosing such information, disclosure need only extend to witnesses the United States intends to call in its case-in-chief. United States v. Gering, 716 F.2d 615, 621 (9th Cir. 1983); United States v. Angelini, 607 F.2d 1305, 1309 (9th Cir. 1979).

Finally, the United States will continue to comply with its obligations pursuant to United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991).

2. Any Proposed 404(b) Evidence

The United States will disclose, in advance of trial, the general nature of any "other bad acts" evidence that the United States intends to introduce at trial pursuant to Federal Rule of Evidence 404(b).

3. Evidence Seized

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy all

evidence seized that is within its possession, custody, or control, and that is either material to the preparation of the defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendants.

4. Request for Preservation of Evidence

As stated above, the United States will preserve all evidence to which the Defendants are entitled pursuant to the relevant discovery rules.

5. Tangible Objects

The United States has complied and will continue to comply with Rule 16(a)(1)(E) in allowing Defendants an opportunity, upon reasonable notice, to examine, inspect, and copy tangible objects that are within its possession, custody, or control, and that is either material to the preparation of the defense or is intended for use by the United States as evidence during its case-in-chief at trial, or was obtained from or belongs to Defendants. The United States, however, need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Defense counsel for Lyons-Hines has stated in his moving papers that "a proposed preservation order has been electronically mailed to the Court for the Court's signature." See Defendant Lyon-Hines' Motion at 15. Although the Government would not oppose a preservation order of the evidence in this case, the Government would request to review the defense's proposed order prior to the Court signing the order.

6. Expert Witnesses

The United States will comply with Rule 16(a)(1)(G) and provide Defendants with a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Federal Rules of Evidence 702, 703 or 705.

7. Evidence of Bias or Motive to Lie

The United States is unaware of any evidence showing that any prospective Government witness is biased or prejudiced against Defendants or has a motive to falsify testimony. The United States will comply with its obligations under Brady, Henthorn, and Giglio.

8. Impeachment Evidence

The United States is unaware of any evidence that any prospective witness has engaged in any criminal act, but will comply with its obligations under Brady, Henthorn, and Giglio, as well as all other applicable rules of discovery. The Government is unaware of any statements favorable to Defendants, and repeats that all reports from the date of arrest have been produced.

9. Evidence of Criminal Investigation of Any Government Witness

The United States objects to providing any evidence that a prospective witness is under criminal investigation, but will provide the conviction record, if any, which could be used to impeach all witnesses the United States intends to call in its case-in-chief.

In addition, the United States will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

10. Evidence Affecting Perception, Recollection, Ability to Communicate or Truth Telling

The United States is unaware of any evidence tending to show that any prospective witness's ability to perceive, recollect, tell the truth, or communicate is impaired. The United States will comply with its obligations under Brady, Henthorn, and Giglio.

11. Witness Addresses

The United States objects to this request as overbroad, unnecessary, and unsupported. Through discovery, Defendants have the names of the officers and agents involved in the arrest. In addition, the United States will provided Defendants with a list of witnesses it intends to call

in its trial memorandum. The United States objects to the request for the name and address of witnesses who will not be called by the Government at trial as overbroad and irrelevant.

12. Name of Witnesses Favorable to the Defendant

The United States is unaware of any witnesses favorable to Defendants.

13. Statements Relevant to the Defense

All known statements have been produced. The United States will continue to comply with its obligation to produce all evidence material to the defense as defined by Rule 16(a)(E)(i).

14. Jencks Act Material

The United States will comply with its discovery obligations under the Jencks Act, Title 18, United States Code, Section 3500, and as incorporated in Rule 26.2.

15. Giglio Information

The United States has complied and will continue to comply with its discovery obligations under Giglio v. United States, 405 U.S. 150 (1972).

16. Scientific and Other Information

The United States will provide Defendants with any scientific tests or examinations in accordance with Rule 16(a)(1)(F).

17. Informants and Cooperating Witnesses

At this time, the United States is not aware of any confidential informants or cooperating witnesses involved in this case. The Government must generally disclose the identity of informants where: (1) the informant is a material witness, and (2) the informant's testimony is crucial to the defense. Roviaro v. United States, 353 U.S. 53, 59 (1957). If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in camera inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). If the United States determines that there is a confidential informant or cooperating witness who is a material witness with evidence helpful to the defense or essential to a fair determination in this

case, the United States will either disclose the identity of the informant or submit the informant's identity to the Court for an in camera inspection.

18. Personnel Records of Government Officers Involved in the Arrest

The United States will comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002)(citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

19. Government Examination of Law Enforcement Personnel Files

The United States will comply with its obligations under United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991), and request that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the undersigned Assistant U.S. Attorney is uncertain whether certain incriminating information in the personnel files is "material," the information will be submitted to the Court for an in camera inspection and review.

20. Training of Border Patrol and DEA Agents

The Government adamantly opposes this request. Defense counsel has not provided any authority demonstrating that he is entitled to this request. Furthermore, the above agencies did not participate in the investigation of this case.

21. Residual Discovery Request

The United States has complied with Defendants' residual request for prompt compliance with Defendants' discovery requests and will continue to do so.

**D. The Government Does Not Have Any Objection to Preserve and Re-Weigh the Drugs**

The Government does not oppose the defense request to preserve and re-weigh the drugs in this case at a pre-arranged time convenient for all parties. Defense counsel stated that a proposed order regarding the preservation and re-weigh of the drugs was attached to his motion. See Defendant Lyon-Hines' Motion at 18. However, the Government did not receive the proposed order through ECF and would request to review the defense's proposed order prior to the Court signing it.

**E. The Grand Jury Instructions were Proper**

**1. The Ninth Circuit Has Foreclosed Defendants' Contention**

Defendants move to dismiss the indictment due to alleged misinstruction of the grand jury in an effort to preserve the issue for appeal. The Ninth Circuit has expressly approved the grand jury instructions at issue in this case numerous times. See United States v. Navarro-Vargas, 408 F.3d 1194, 1202-04 (9th Cir. 2005) (en banc); United States v. Adams, 343 F.3d 1024, 1027 n.1 (9th Cir. 2003) (the instruction does "not misstate the constitutional role and function of the grand jury."); United States v. Marcucci, 299 F.3d 1156, 1164 (9th Cir. 2002) (per curiam) (the instruction was constitutional and "consistent with the historical function of the grand jury--protecting citizens from unfounded accusations not supported by probable cause."), cert. denied, 538 U.S. 934 (2003); United States v. Rivera-Sillas, 417 F.3d 1014, 1021 (9th Cir. 2005) (clear Ninth Circuit precedent controlled its holding that the instruction to the grand jury was constitutional).

**2. Even if the Instructions Were Erroneous, Defendants Have Failed to Demonstrate Any Prejudice**

Absent a showing of prejudice to a defendant, federal courts generally may not dismiss an indictment for errors in grand jury proceedings. In the case of Bank of Nova Scotia v. United

States, 487 U.S. 250 (1988), for example, the district court dismissed all counts of an indictment on the ground of prosecutorial misconduct during a grand jury investigation. The district court did not, however, support its dismissal with a finding that the defendant was prejudiced by the misconduct. In reversing the dismissal, the Supreme Court held that when a defendant moves to dismiss an indictment before the conclusion of trial, a federal court may not invoke its supervisory power over the grand jury process if the error was harmless. See id. at 254. To establish prejudice, at least where non-constitutional error is alleged, the defendant must show "'that the violation substantially influenced the grand jury's decision to indict', or . . . there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." Id. at 256 (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)); see, e.g., United States v. Spillone, 879 F.2d 514, 521 (9th Cir. 1989) (although errors affecting fundamental fairness are reviewable, technical violations are not reviewable); United States v. Benny, 786 F.2d 1410, 1421 (9th Cir. 1986) (no dismissal of indictment based in part on witness's perjured testimony when grand jury heard other competent testimony and was aware of possibility witness lied).

Any alleged shortcomings in the grand jury instructions, even if found to exist, would not constitute "structural" defects. Defendants' challenges to the grand jury instructions do not amount to a situation in which "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." Id.

**F. Defendants' Motion To Suppress Statements Should be Denied**

Defendants move to suppress any statements taken in violation of Miranda v. Arizona, 396 U.S. 868 (1969) and claims that the Government must prove that Defendants' waiver of his Miranda rights were voluntary, knowing and intelligent. First, Defendants' statements to the primary and secondary officers are admissible because Defendants were not in custody at the time they made those statements. Second, the rights given to Defendants were plain and unambiguous.

Third, Defendants fail to provide this Court with a declaration alleging a specific factual dispute. And finally, the Miranda advisal and waiver and post-arrest statements were videotaped. The Government will provide the Court with a copy of the taped interview should the Court desire one. Given this, an evidentiary hearing in this case is simply unnecessary and a waste of judicial resources.

**1. Defendants' Statements to Primary and Secondary Inspectors at the Port of Entry Are Admissible Because They Were Not Products of Custodial Interrogation**

When a person has been deprived of his or her freedom of action in a significant way, Government agents must administer Miranda warnings prior to questioning the person. Miranda v. Arizona, 384 U.S. 436 (1966). Such a requirement, however, has two components: (1) custody, and (2) interrogation. Id. at 477-78. A person is not simply in custody because agents stop him at the international border. Questioning by an inspector at a port of entry does not transform a routine inspection into a custodial interrogation requiring the agents to give Miranda warnings. United States v. Manasen, 909 F.2d 1357 (9th Cir. 1990); United States v. Iroise, 796 F.2d 310, 314 (9th Cir. 1996)(same); United States v. Estrada-Lucas, 651 F.2d 1261, 1265 n.3 (9th Cir. 1999)("A person answering initial questions of a Customs agent at the border is not already in custody"); United States v. Butler, 249 F.3d 1094, 1098 (9th Cir. 2001)(same).

Any statements of the defendants to primary and secondary inspectors at the port of entry do not require compliance with Miranda to be admissible because they were not the product of a custodial interrogation. When Defendants were stopped at the border and referred to secondary inspection, they were detained. The test for determining whether an individual stopped at the border is detained or under arrest has been set forth by the Ninth Circuit in United States v. Bravo, 295 F.3d 1002, 1009 (9th Cir. 2002). The question is whether, under the totality of the circumstances, "a reasonable person would believe that he is being subjected to more than the 'temporary detention occasioned by border crossing formalities.'" Id. (citation omitted). In this case, Defendants' statements resulted from initial questioning by Customs and Border Protection

(CBP) Calexico East Port of Entry. At the time the defendants made statements to CBP, the defendants were not handcuffed or restrained in any way and it was not yet determined that marijuana was concealed in the vehicle. Under the totality of the circumstances, the defendants were detained, not arrested. See id. at 1009-10. Defendants were not in custody, and Miranda warnings were not required.

**2. Defendants' Post-Arrest Statements Were Voluntary and Made After a Knowing, Intelligent, and Voluntary Waiver**

Defendants' post-arrest statements are admissible because, as demonstrated on the videotaped statement, they knowingly, intelligently, and voluntarily waived their Miranda rights. A statement made in response to custodial interrogation is admissible under Miranda v. Arizona, 384 U.S. 437 (1966) and 18 U.S.C. § 3501 if a preponderance of the evidence indicates that the statement was made after an advisement of rights, and was not elicited by improper coercion. See Colorado v. Connelly, 479 U.S. 157, 167-70 (1986) (preponderance of evidence standard governs voluntariness and Miranda determinations; valid waiver of Miranda rights should be found in the "absence of police overreaching"). Although the totality of circumstances, including characteristics of the defendant and details of the interview, should be considered, improper coercive activity must occur for suppression of any statement. See id. (noting that "coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary'"); cf. Schneckloth v. Bustamonte, 412 U.S. 218, 226 (1973) ("Some of the factors taken into account have included the youth of the accused; his lack of education, or his low intelligence; the lack of any advice to the accused of his constitutional rights; the length of detention; the repeated and prolonged nature of the questioning; and the use of physical punishment such as the deprivation of food or sleep.") (citations omitted). While it is possible for a defendant to be in such a poor mental or physical condition that they cannot rationally waive their rights (and misconduct can be inferred based on police knowledge of such condition, Connelly, 479 U.S. at 167-68), the condition must be so severe that the defendant was rendered utterly incapable of rational choice.

See United States v. Kelley, 953 F.2d 562, 564 (9th Cir.1992) (collecting cases rejecting claims of physical/mental impairment as insufficient to prevent exercise of rational choice).

Here, Defendants were properly advised of their Miranda rights following arrest. As demonstrated in their videotaped interview and their signed waiver form, Defendants acknowledged that they understood their rights and agreed to answer questions without the presence of an attorney. Defendants make no specific allegation of any coercive conduct on the part of the interviewing officers. Neither do Defendants claim that their statements resulted from being intimidated, threatened, or coerced in any manner by the interviewing officers. Defendants fail to allege with any specificity that the Miranda advisal and waiver were improper. The totality of circumstances demonstrates that Defendants' post-arrest statements were voluntary. Defendants' Motion for a voluntariness hearing should be denied.

**3. Defendant's Request for an Evidentiary Hearing Should Be Summarily Denied For Failure to Comply with Local Criminal Rule 47.1(g)**

Under Ninth Circuit and Southern District precedent, as well as Southern District Local Criminal Rule 47.1(g)(1)-(4), a defendant is entitled to an evidentiary hearing on a motion to suppress only when the defendant adduces specific facts sufficient to require the granting of the defendant's motion. United States v. Batiste, 868 F.2d 1089, 1093 (9th Cir. 1989) ("[T]he defendant, in his motion to suppress, failed to dispute any material fact in the government's proffer. In these circumstances, the district court was not required to hold an evidentiary hearing."); United States v. Moran-Garcia, 783 F. Supp. 1266, 1274 (S.D. Cal. 1991) (stating that boilerplate motion containing indefinite and unsworn allegations was insufficient to require evidentiary hearing on defendant's motion to suppress statements). Specifically, Local Criminal Rule 47.1(g)(1) states that "[c]riminal motions requiring predicate factual finding shall be supported by declaration(s)" and that "[t]he Court need not grant an evidentiary hearing where either party fails to properly support its motion or opposition." Here, Defendants have failed to support his allegation with a declaration, in clear opposition to Local Rule 47.1(g). The Ninth Circuit has held that a District Court may properly deny a request for an evidentiary hearing on

a motion to suppress evidence because the defendant did not properly submit a declaration pursuant to a local rule. United States v. Wardlow, 951 F.2d 1115, 1116 (9th Cir. 1991).

In addition, Defendants' allegation that a Miranda violation occurred and that his statement was involuntary fails to demonstrate a disputed factual issue requiring an evidentiary hearing. Indeed, Defendant did not allege any facts to support his claim that his statements were involuntary. In reality, there cannot be a factual dispute as the interview was videotaped and Defendants have made no allegation that coercion occurred either pre- or post-taping. See United States v. Howell, 231 F.3d 616, 620 (9th Cir. 2000) ("An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." (citation omitted). As such, this Court should deny Defendants' Motion. See Batiste, 868 F.2d at 1092 (stating that Government proffer alone is adequate to defeat a motion to suppress where the defense fails to adduce specific and material disputed facts).

**G. Motion for Leave to File Further Motions**

The Government opposes this request unless the motion is based upon newly discovered evidence not available to Defendants at the time of the motion hearing.

## IV

## CONCLUSION

For the foregoing reasons, the United States requests that Defendants' Motions be denied where opposed.

DATED: December 10, 2007.

Respectfully Submitted,

KAREN P. HEWITT
United States Attorney

/s/ Luella M. Caldito
LUELLA M. CALDITO
Assistant U.S. Attorney

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL CURTIS KOZY (1),<br>ELIZABETH ANN LYONS-HINES (2),<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Criminal Case No. 07CR3027-LAB<br><br>**CERTIFICATE OF SERVICE** |

IT IS HEREBY CERTIFIED THAT:

I, LUELLA M. CALDITO, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTIONS TO: (1) PRECLUDE THE PROSECUTION FROM PROCEEDING UNDER AN AIDING AND ABETTING THEORY ON ANY OF THE COUNTS; (2) SEVER THE DEFENDANTS' TRIALS; (3) COMPEL DISCOVERY AND PRESERVE EVIDENCE; (4) PRESERVE AND REWEIGH NARCOTICS EVIDENCE; (5)DISMISS INDICTMENT DUE TO MISINSTRUCTION OF THE GRAND JURY; (6) SUPPRESS STATEMENTS; AND (7) GRANT LEAVE TO FILE FURTHER MOTIONS

on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

**Robert Boyce, Esq., counsel for Defendant Michael Curtis Kozy;**

**Joseph McMullen, Federal Defenders of San Diego, Inc., counsel for Defendant Elizbeth Lyons-Hines**

I hereby certify that I have caused to be mailed the foregoing, by the United States Postal Service, to the following non-ECF participants on this case:

**None**

the last known address, at which place there is delivery service of mail from the United States Postal Service.

I declare under penalty of perjury that the foregoing is true and correct. Executed on December 10, 2007.

/s/ Luella M. Caldito

LUELLA M. CALDITO